UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA KUCHAR-KUSZNIR,

    Plaintiff,                                    Civil Action No. 16-13957

v.

                                           HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff Diana Kuchar-Kusznir ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's Motion for Summary Judgment [Docket #24] is GRANTED, and Plaintiff's Motion for Summary Judgment [Docket #23] is DENIED.

## PROCEDURAL HISTORY

On January 22, 2014, Plaintiff filed an application for DIB, alleging disability as of May 1, 2005 (Tr. 143). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 29, 2015 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Patricia S. McKay (Tr. 31). Plaintiff, represented by attorney Frank

Cusmano, testified (Tr. 38-71), as did Vocational Expert ("VE") Pauline McEachin (Tr. 72-80).  On October 16, 2015, ALJ McKay found that Plaintiff was not disabled as of the date last insured ("DLI") for DIB of September 30, 2005 (Tr. 19-26).  On September 11, 2016, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on November 8, 2016.

## BACKGROUND FACTS

Plaintiff, born May 29, 1954, was 51 on the DLI of September 30, 2005 (Tr. 26, 143).  She completed two years of college and worked previously as a medical assistant and laboratory technician (Tr. 156).  She alleges disability due to degenerative disc disease, spinal stenosis, sciatica, viral meningitis, migraine headaches, arthritis, Carpal Tunnel Syndrome ("CTS"), fibromyalgia, osteoporosis, Chronic Obstructive Pulmonary Disorder ("COPD"), sleep apnea, borderline diabetes, cataracts, glaucoma, hypertension, chest pain, depression, and anxiety (Tr. 155).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony as to her condition on or before September 30, 2005:

In 2005, she lived with her husband and two children, 29 and 23 (Tr. 39).  She stood 5'4" and weighed 200 pounds (Tr. 40).  She lived in a one-story home with a basement and attached garage (Tr. 41).  She seldom used the basement and did the laundry with her husband's help (Tr. 41).  At the time of the alleged onset of disability, she was working as

a medical assistant and lab technician (Tr. 41). Before that, she also worked as a secretary and restaurant hostess (Tr. 42). Prior to the May, 2005 onset of disability, she gradually reduced her working hours (Tr. 44). She attributed the scarcity of objective evidence prior to the DLI to the fact that she received diagnoses for a number of long-standing conditions well after September, 2005 (Tr. 48). She experienced repeated bouts of meningitis including one during the relevant period but had not experienced the condition since 2008 (48-49). Due to meningitis, she experienced memory loss, a shortened attention span, and headaches (Tr. 50). She also experienced arthritis of the neck (Tr. 51). She underwent physical therapy multiple times for degenerative disc disease (Tr. 52). As of 2005, she also experienced hypertension, high cholesterol, Gastroesophageal Reflux Disease ("GERD"), anxiety, and COPD (Tr. 53). She used an inhaler for COPD, and experienced chronic bronchitis and sleep apnea prior to the DLI (Tr. 53). During the relevant period, she took Prozac on a regular basis and Xanax on an as needed basis (Tr. 55). She was diagnosed with fibromyalgia by a rheumatologist in 2005 (Tr. 55).

On an average day in 2005, she experienced mental fogginess but "pushed" herself along to remain functioning (Tr. 56). She experienced crying jags, indigestion, diarrhea, and pain (Tr. 57). During that period, she helped get her daughters ready in the morning before they left home to take college courses (Tr. 57). She was able to take care of her personal needs, albeit slowly and with pain (Tr. 58). She was able to walk short distances (Tr. 59). During the same period, Plaintiff's mother lived with the family, requiring Plaintiff to make

and keep doctors' appointments (Tr. 59-60). She experienced the medication side effects of constipation, diarrhea, shortness of breath, dizziness, and fatigue (Tr. 61). She quit smoking in April, 2005 after experiencing double pneumonia (Tr. 61). She drank on only rare occasions (Tr. 61). In 2005, she was unable to sit for more than 15 minutes at a time or stand or walk for more than minimal periods (Tr. 63). She was unable to lift more than five pounds, bend, crawl, kneel, or crouch (Tr. 64). She experienced headaches and back, neck, and leg pain (Tr. 65). She was prescribed braces for CTS and experienced problems with fine manipulative activity (Tr. 66). She also experienced psoriasis and interrupted sleep (Tr. 68-69). As a result of fatigue, she was required to nap up to three times daily (Tr. 69). At the beginning of 2005, she worked up to three days every two weeks but as the year progressed, was unable to work more than one day every two weeks (Tr. 71).

    **B.**    **Medical Evidence**

### 1. Treating Sources[1]

December, 1999 nerve conduction studies showed mild right-sided CTS (Tr. 617). March, 2004 records by Stuart Gildenberg, M.D. note the condition of angiofibroma (Tr. 303). Treating notes from the same month note that while Plaintiff had experienced "crying jags" her whole life, they had intensified recently (Tr. 588). An October, 2004 chest x-ray was unremarkable (Tr. 468). A March, EEG was within normal limits (Tr. 587). The same

---

[1] Medical records significantly pre/post-dating the relevant period of May 1, 2005 through September 30, 2005, while reviewed in full, are omitted from the present discussion.

month, Plaintiff reported that she was "doing well" (Tr. 589). In April, 2005, Plaintiff was diagnosed with pneumonia after seeking emergency treatment for flu-like symptoms (Tr. 215-216). Habib G. Gennaoui, M.D. noted a history of hypertension, migraine headaches, GERD, and anxiety (Tr. 218). Imaging studies were consistent with COPD (Tr. 464). Plaintiff reported that she had not experienced meningitis symptoms for the past two years (Tr. 220). An EEG showed mild encephalopathy (Tr. 448). Plaintiff was discharged the following week (Tr. 224, 451). She did not experience problems breathing at the time of discharge (Tr. 224). She was instructed to stop smoking (Tr. 224). Plaintiff denied prior breathing problems (Tr. 227).

June, 2005 imaging studies were negative for sinusitis but were consistent with moderately severe rhinitis (Tr. 268). In July, 2005, Plaintiff was admitted to the hospital for a recurrence of meningitis (Tr. 231). She was discharged three days later with directions for "activity as tolerated" (Tr. 236). Plaintiff exhibited full strength and normal cognitive abilities (Tr. 239). A chest x-ray was unremarkable (Tr. 459). October, 2005 records note ongoing skin and scalp problems (Tr. 307-309).

January, 2006 imaging studies showed kidney stones (Tr. 295). A chest x-ray from the following month was unremarkable (Tr. 456). The same month, an MRI of the cervical spine showed mild and moderate disc bulging (Tr. 429, 407). A June, 2006 chest x-ray was essentially unremarkable (Tr. 444). An MRI of the lumbar spine showed a small disc herniation at L4-L5 with "no significant compromise of the spinal canal or neural foramen"

(Tr 430). August, 2006 imaging studies of the lumbar spine showed only degenerative changes (Tr. 442). Records from the same month note the condition of fibromyalgia (Tr. 427). Plaintiff was advised to "do gentle stretches" and physical therapy (Tr. 427). In October, 2006, Plaintiff reported recent bouts of diarrhea (Tr. 316). Treating records note diagnoses of depression, anxiety, migraines, and sleep apnea in 2005 (Tr. 316). October, 2006 records note that the condition of sleep apnea was currently "moderate-to-severe" (Tr. 411). Dr. Gennaoui's January, 2008 records note that Plaintiff was being treated for a fourth bout of meningitis with earlier episodes in 2001, 2002, and 2005 (Tr. 618).

In March, 2014, Manveen Saluja, M.D., stating that she had treated Plaintiff since 2006, noted a history of fibromyalgia, right CTS, and moderate to severe sleep apnea (Tr. 469). She found that Plaintiff was unable to perform her activities or work due to neck and back pain (Tr. 469). January, 2015 records state that Plaintiff was under a lot of stress due to taking care of her mother (Tr. 472). In May, 2015, Dr. Gennaoui gave Plaintiff a "fair" prognosis, noting that she experienced the conditions of fibromyalgia, spinal stenosis, depression, and anxiety (Tr. 574-575). He found that Plaintiff was incapable of even sedentary work (Tr. 575-576).

### 2. Non-Treating Sources

In February, 2014, James Tripp, Ed.D. performed a non-examining review of the treatment records on behalf of the SSA, finding insufficient evidence of a psychological disorder causing work-related limitations (Tr. 88). The same month, Twaide Langham, D.O.

examined the medical records on behalf of the SSA, concluding that the treating records for the applicable period did not support a finding of a work-related impairment (Tr. 90).

### C. Vocational Expert Testimony

VE Pauline McEachin classified Plaintiff's past relevant work as a general office clerk as unskilled and exertionally light[2] (Tr. 201). The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [L]ight exertion, but with some additional limitations. This person would be limited to work that's primarily low stress work and low stress work means to me she's not making complex decisions. She's not working at a production rate. She would need to avoid pulmonary irritants, workplace hazards, and that would be things like dangerous moving machinery or unprotected heights, but wouldn't want her to climb any ladders or ropes or scaffolding. She needs to avoid working with power or vibratory type tools. As far as climbing stairs, and crouching, and crawling, and kneeling, and stooping and bending, she's able to do that but less than occasionally during the day. And with her hands she could grasp and finger, gross manipulation and fine fingering on a frequent, not a constant basis. With those limitations, since there's no past relevant work to consider, are there any jobs that would have existed for that person? (Tr. 73).

Based on the above restrictions, the VE testified that the hypothetical individual could perform the light, unskilled jobs of an information clerk (180,000 nationally); general office clerk (250,000); and inspector (180,000) (Tr. 74). The VE testified that if the individual

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

were additionally limited to work with a sit/stand option, the above-stated job numbers would be reduced to 100,000, 80,000, and 40,000 respectively (Tr. 74). She testified that if the restriction were further amended to limit the individual to five pound's lifting, the job numbers would remain unchanged (Tr. 75). She stated further that a restriction to occasional grasping and fingering would not preclude the job of information clerk (Tr 76).

In response to questioning by Plaintiff's attorney, the VE stated that if the hypothetical individual were restricted to standing or walking for two hours a day, she would be limited to sedentary work[3] (Tr. 79-80). The VE stated that the need to be off task more than 20 percent of the workday would also preclude all work (Tr. 80).

**D.    The ALJ's Decision**

Citing Plaintiff's treating records, ALJ McKay found that between May 1, 2005 and September 30, 2005, Plaintiff experienced the following medically determinable impairments: "[H]istory of viral meningitis and aseptic meningitis; history of hypertension; history of hyperlipidemia; history of migraine headaches; history of ovarian cyst removal; obesity; obstructive sleep apnea; chronic obstructive pulmonary disease/pulmonary eosinophilia; history of renal colic/kidney stone; and, history of angiofibroma (Tr. 21). However, she found that none of the conditions "significantly

---

[3] Plaintiff, over the age of 50 at the time of alleged onset of disability, would be categorized as an individual "closely approaching advanced age" under the Regulations. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. In the "closely approaching" age group (50 to 55), a finding that she was limited to exertionally sedentary, unskilled work would generally result in a disability finding. *Id.*

limited" Plaintiff's ability to perform basic work-related activities for twelve consecutive months (Tr. 22)(*citing* 20 C.F.R. 404.1521)(*see also* SSR 85-28, 1985 WL 56856 (1985)).

The ALJ noted that most of the medical records post-dated the DLI of September 30, 2005 (Tr. 22). She acknowledged that Plaintif experienced a recurrence of meningitis during the relevant period but that the condition "was treated and improved" within weeks (Tr. 22). The ALJ observed that while Plaintiff experienced pneumonia in April, 2005, followup records showed that the lung problems "were almost completely resolved" before the DLI (Tr. 23). The ALJ found that the remaining conditions were "slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect" on Plaintiff's ability to work (Tr. 23). The ALJ noted that Plaintiff's allegations regarding the conditions of fibromyalgia, degenerative disc disease, GERD, polyps, and esophagitis were unsupported by the treating records for the relevant period (Tr. 24). The ALJ found that for the relevant period, Plaintiff's psychological limitations were mild (Tr. 24-25). She noted that Plaintiff was able to care for her children and mother; drive an automobile; leave home at least five times a week; visit family members; shop; and attend church (Tr. 26).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff faults ALJ McKay for ending the administrative analysis at Step Two, arguing that the record generously supports the finding that at least one of the medically determinable impairments created work-related limitation. *Plaintiff's Brief* , 9-11, *Docket #23,* Pg ID 709. She contends that the ALJ failed to consider both the objective medical evidence and her subjective complaints in finding her not disabled at Step Two. *Id.*

At Step Two, an "impairment or combination of impairments ... [is] found 'not severe' and a finding of 'not disabled' is made ... when medical evidence establishes only a slight abnormality or [ ] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856,*3 (1985). "In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "The goal of the test is to 'screen out totally groundless claims.' " *Id.* (*citing Farris v. Secretary of Health & Human Services*, 773 F.2d 85, 89 (6th Cir. 1985)).

20 C.F.R. § 404.1522(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28, *supra,* at *3. "Basic work activities" include the physical functions of "walking, standing, sitting" as well as the capacity for "seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting." *Id.*

The ALJ did not err in concluding that none of the medically determinable impairments caused "significant" work-related limitations during the applicable period. While Plaintiff cites a June, 2005 CT scan of the sinuses showing a moderately severe condition, there is no suggestion that the sinus condition caused any degree of functional limitation. *Plaintiff's Brief* at 10. She also cites the April, 2005 hospital records showing a diagnosis of COPD with a reference to a diagnosis of sleep apnea. *Id.* However, followup imaging studies of the lungs show that the condition was largely resolved by July, 2005 (Tr. 459). February, 2006 imaging studies also confirm that the chest condition was resolved (Tr. 456). As such, Plaintiff cannot demonstrate that the chest condition "lasted or c[ould] be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Likewise, none of the records created during the relevant period suggest that the condition of sleep apnea created any degree of work-related limitation.

Finally, Plaintiff cannot show that the condition of meningitis caused *continuous*

limitations for 12 months or more. Dr. Gennaoui's January, 2008 records state that Plaintiff experienced *bouts* of meningitis in 2001, 2002, and [July] 2005 before experiencing a final episode in 2008 (Tr. 618). However, discharge notes from Plaintiff's July, 2005 hospitalization for meningitis state that she exhibited full strength and normal cognitive abilities (Tr. 239) and allow for "activity as tolerated" (Tr. 236). While the subsequent records note a history of meningitis, they did not suggest that the condition created ongoing work-related limitations. The July, 2005 reference to "headaches, back pain, and neck pain" appear to refer to the symptoms of meningitis rather than an independent condition, given that she was admitted for hospital treatment the same day (Tr. 231, 368). While Plaintiff also relies on December, 1999 nerve conduction studies consistent with mild right-sided CTS, they predate the alleged onset of disability by over five years and are not relevant to her condition during the narrow four-month window between May 1, 2005 and September 30, 2005.

For overlapping reasons, Plaintiff's argument that her allegations of limitation were erroneously rejected is not well taken. A claimant's allegations of ongoing limitation, standing alone, are generally insufficient to counter the ALJ's conclusion that her claims were not credible. The lack of evidence supporting *continuously* limiting conditions, coupled with Plaintiff's regular activities, supports the ALJ's credibility determination. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's credibility determinations about the claimant are to be given great weight"). The ALJ noted that Plaintiff's wide range of activities

during the relevant period included taking care of her elderly mother, helping her children, driving, shopping, and attending church (Tr. 26). "[T]he ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations . . . and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). Here, substantial evidence supports the conclusion that during the relevant period, Plaintiff did not experienced ongoing limitations which would limit her work performance.[4] Accordingly, the ALJ's Step Two conclusion that she did not experience significant work-related impairments does not warrant a remand.

Because the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence and well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

---

[4] Moreover, the VE's testimony that a hypothetical individual of Plaintiff's age, education, and work experience could perform a significant range of light work with a sit/stand option and a limitation to occasional manipulative activity undermines Plaintiff's claim of disability during the relevant period (Tr. 73-76).

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Docket #24] is GRANTED, and Plaintiff's Motion for Summary Judgment [Docket #23] is DENIED.

s/ R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: March 22, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 22, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla  
Case Manager to the  
Honorable R. Steven Whalen